**DUESENBERG, Inc., OF DELAWARE v. COMMISSIONER OF INTERNAL REVENUE.**

**No. 5606.**

Circuit Court of Appeals, Seventh Circuit.

June 29, 1936.

Earle W. Wallick and David J. Shorb, both of Washington, D. C., for petitioner.

Frank J. Wideman, Asst. Atty. Gen., and Sewall Key and Maurice J. Mahoney, Sp. Assts. to Atty. Gen., for respondent.

Before SPARKS, Circuit Judge, and LINDLEY and BALTZELL, District Judges. .

BALTZELL, District Judge.

The petitioner is a Delaware corporation with its principal place of business located in the city of Indianapolis, Ind., and is engaged in the manufacture and sale of automobiles. A deficiency in the sum of $14,377.22 in the amount of its income tax for the fiscal year ended November 30, 1930, was determined by respondent, and, upon appeal, was sustained by the Board of Tax Appeals. This proceeding is for the purpose of reviewing the action of the Board in thus sustaining such determination.

During the fiscal year ended November 30, 1930, petitioner delivered 31 automobiles to four of the subsidiaries of the De Kalb Company, which were, at that time, acting as its distributors in the territory in which they were located. The cost of these automobiles to the petitioner was $202,587.85 and their sale value to it was $304,269.70. Automobiles were frequently shipped to each of these distributors by petitioner without first receiving an order therefor. Such shipments were made under the direction of its vice president and sales manager, who based his decision to make shipment upon his knowledge of the number of automobiles such distributors had on hand at the time. Each automobile thus shipped and delivered was accompanied by an invoice containing a description of the automobile, the price to the distributor, the terms, etc. Following the word "Terms" upon the invoice were, in most instances, the words "Open Account, Subject Our Draft," although upon a few the words "Open Account" only were found. The sale price of each such automobile was charged upon the books of petitioner as an open account with the company to which it was delivered, and no in-

terest was charged upon such account. The difference between the cost price of these automobiles to the petitioner and the amount at which they were carried upon its books as an open account of the four companies to which delivered, was $101,681.85. Even though they were charged to the account of the company to which delivered, it was the custom that they were not paid for until sold by such company. At the close of the taxable year in question none of these 31 automobiles was included in petitioner's inventory. The accrual method of accounting was used by petitioner in reporting its income.

The Commissioner determined that the 31 automobiles in question had been sold by petitioner during the taxable year, and consequently that it should be chargeable with a profit from the sale of such automobiles for that year in the amount of $101,681.85, being the difference between the cost and sale prices. In this determination the Commissioner was sustained by the Board of Tax Appeals. The amount of the determined profit is not in dispute, but is conceded by petitioner to be correct. The question thus presented is whether or not the facts support the conclusion that the automobiles in question were sold as determined by the Commissioner and as decided by the Board. If they were sold during the taxable year in question, then the difference between their cost price and the price at which they were sold must be considered as a profit and should be included in petitioner's gross income for the fiscal year ended November 30, 1930. Revenue Act 1928, § 22 (a), 45 Stat. 791, 797, 26 U.S.C.A. § 22 (a) and note.

Only one witness gave oral testimony upon the hearing before the Board; the main facts being stipulated. Such witness was C. L. Bush, treasurer of petitioner, who described the manner in which petitioner transacted business with its distributors. He testified that the conditions upon which sales were made by petitioner to its four distributors were not reduced to writing; that payments were made for the automobiles delivered to such distributors after their delivery to the customers, and that no remittance was made to petitioner until sufficient funds had been accumulated to take care of the needs of the distributors. If the automobiles delivered to the distributors were not sold by them, the witness said that they either remained in stock or were transferred back to the factory for one reason or another, and reshipped to some other branch. The effect of such testimony was simply to give information to the Board, in addition to the facts contained in the stipulation, as to the manner in which petitioner conducted its business between itself and its distributors, so as to enable the Board to determine, from the facts, whether or not the transactions between them constituted a sale.

The determination of the Commissioner, sustained by the Board, that the transaction in question constituted a sale is prima facie correct. Such determination is, of course, not conclusive, but the burden is upon the petitioner to show that it is not correct. Wickwire, etc., v. Reinecke, Collector, 275 U.S. 101, 48 S.Ct. 43, 72 L.Ed. 184; United States v. Rindskopf, 105 U.S. 418, 26 L.Ed. 1131; Reinecke, Collector, v. Spalding, 280 U.S. 227, 50 S.Ct. 96, 74 L.Ed. 385; Burnet, Commissioner of Internal Revenue, v. Houston, 283 U.S. 223, 51 S.Ct. 413, 75 L.Ed. 991. The mere fact that each separate automobile, when delivered, was accompanied by an invoice, is not sufficient, within itself, to justify the conclusion that the transaction constituted a sale. But, when it is considered that each invoice contained, upon its face, language which may be considered as indicating the intention of the parties, then such invoices may aid greatly in determining whether or not the transaction did, as concluded by the Board, constitute a sale. The conditions upon which the automobiles were delivered were set forth in positive language, "Open Account, Subject Our Draft" or simply "Open Account." These conditions following the word "terms" upon the invoice indicate rather clearly the intention of the parties; that is, that a sale was considered to have been made upon "Open Account." It is rather significant also that upon the books of petitioner the sale price of these automobiles is also charged to the company to which delivered. Furthermore, at the expiration of the year, the inventory of petitioner fails to contain any of the 31 automobiles in question. It would seem that petitioner would have included them in its inventory if it had believed that they belonged to it at that time. The fact that the automobiles were not paid for by the distributors until sold by them to their customers is not inconsistent with the determination that a sale was made at the time of their delivery to such distributors. Such an arrangement with

petitioner was perfectly legitimate and consistent with the decision of the Board, when considered together with all other facts. There can be no doubt but that the facts are sufficient to sustain the conclusion of the Board that petitioner did sell the automobiles in question during the taxable year, and that the profit derived therefrom should be included in its gross income for that year in accordance with the determination of the Commissioner and the decision of the Board.

During the fiscal year ended October 31, 1927, petitioner expended the sum of $97,697.60 in development and experimental work upon a new model automobile known as model J. During the fiscal years ended October 31, 1928, and October 31, 1929, it expended the sums of $85,233.20 and $17,069.20, respectively, for the same purpose, making a total sum of $200,000 expended during the three fiscal years. Each separate amount was charged in its respective fiscal year upon the books of petitioner as a business expense, and was deducted from its gross income in its income tax return for each such year, respectively. In determining the income tax liability of petitioner for each of these three fiscal years, the Commissioner allowed the deduction as a business expense for the year in which incurred.

It was anticipated by petitioner that it would produce 500 automobiles of this model with an allocation of development and experimental cost of $400 each. The first of this model was completed during the fiscal year ended October 31, 1929, and during that year a total of 147 was produced at an allocated development and experimental cost of $58,800. Petitioner changed its fiscal year on October 31, 1929, making it end on November 30, thereafter. Consequently, it filed a federal income tax return for the period of one month, that is, the month of November, 1929, under authority of the Commissioner. During that month it produced 33 automobiles of this model at an allocated development and experimental cost of $13,200. In the fiscal year ended November 30, 1930, it produced 135 of these automobiles at an allocated development and experimental cost of $54,000.

After deducting the development and experimental cost of $97,697 as an expense for the fiscal year ended October 31, 1927, petitioner sustained a net loss of $124,262.-79 for that year. It, therefore, filed a non-taxable return, and the Commissioner found no tax due. A similar return was filed for the fiscal year ended October 31, 1928, showing a net loss of $165,821.43, and consequently the Commissioner determined that no tax was due for that year. A net income of $28,436.38 was reported by petitioner for the fiscal year ended October 31, 1929, before taking any deduction for net losses of prior years and without any deduction for amortization of allocated development and experimental costs of $58,800 on 147 automobiles of model J produced during that year. Because of an allowable adjustment of inventory amounting to $17,244.44 petitioner's net income for that year was only $11,191.94, after making all allowances. A return was filed by petitioner for that year showing no tax due after taking a deduction for the net losses of prior years. It was determined by the Commissioner that no tax was due, because of such net losses. A return was filed by petitioner for the month of November, 1929, showing a net income of $43,-343.76 for that period, before deducting the net losses of prior years and without deducting any amount for amortization of allocated development cost of $13,200 on 33 model J automobiles produced during that month. Because of the net losses sustained in prior years, no tax was determined by the Commissioner to be payable for that period.

It is to be observed that the amount expended by petitioner for development and experimental purposes was deducted as a business expense for the year in which such expenditure was made. This applies to the fiscal years ended October 31, 1927, October 31, 1928, and October 31, 1929, respectively, during which three fiscal years the aggregate amount of $200,000 was expended and deducted in its income tax returns. It is petitioner's contention that this expenditure should not have been deducted as an ordinary and necessary business expense for the year in which such expense was incurred, but should have been considered as a capital expenditure to be amortized over the years in which the model J automobiles were actually produced. Since this automobile was not produced until some time within the fiscal year ended October 31, 1929, petitioner contends that the aggregate amount of $182,930.80 expended during the two immediately preceding years should not have been deducted as a business expense for those years,

but should be amortized over the years of the production thereof in proportion to the number produced each year. Furthermore, that the amount expended for that purpose during the fiscal year ended October 31, 1929, should have been deducted as a capital expenditure instead of an expense, and when there was added thereto the proper amount, as represented by the amortization of the expenditures for the same purpose during the two immediately preceding years, it would, in fact, have sustained a net loss for that year for which amount it is entitled to a deduction for the fiscal year in question. The Commissioner found against these contentions, and was sustained therein by the Board of Tax Appeals.

The method of accounting adopted and used by petitioner was upon the accrual basis and was one which had been approved by respondent. This was true during all of the years in question. The question involved in the instant case is largely one of accounting practice. Any method of accounting should reflect the true situation under the circumstances in the case. The Revenue Act provides that: "The net income shall be computed upon the basis of the taxpayer's annual accounting period (fiscal year or calendar year, as the case may be) in accordance with the method of accounting regularly employed in keeping the books of such taxpayer; * * * or if the method employed does not clearly reflect the income, the computation shall be made in accordance with such method as in the opinion of the Commissioner does clearly reflect the income." Revenue Act 1926, § 212 (b), 44 Stat. 23; Revenue Act 1928, § 41, 45 Stat. 805, 26 U.S.C.A. § 41 and note. The Treasury Department has promulgated certain regulations with reference to the method of accounting to be used by taxpayers; such regulations having been promulgated, under the Revenue Acts then in force, as follows: "It is recognized that no uniform method of accounting can be prescribed for all taxpayers, and the law contemplates that each taxpayer shall adopt such forms and systems of accounting as are in his judgment best suited to his purpose. Each taxpayer is required by law to make a return of his true income. He must, therefore, maintain such accounting records as will enable him to do so. * * *" Reg. 69, art. 24, Act 1926; Reg. 74, art. 323, Act 1928.

In determining and approving the method of accounting, a responsibility rested upon both the petitioner and the respondent. The petitioner evidently considered the method used by it over the period in question as a proper one and that it properly reflected its income. This view was in accord with that of respondent. The income tax returns of petitioner were approved by respondent for these years, and no tax was assessed or paid for either year. True, no tax would have been assessed for those years, even though no deduction had been made for the expenditures in question. It was considered by both the petitioner and respondent that they were proper deductions as business expenses for the year in which incurred, and it was so determined. No doubt seemed to exist at that time but that the method of accounting used, and the income tax returns filed, properly reflected the income of petitioner for the years in question. Necessarily, much discretion must be given the Commissioner in determining whether or not the method of accounting used by any taxpayer properly reflects his income. In the instant case the Commissioner determined, at the time each return was filed, that it properly reflected the income of petitioner, and again, in fixing its tax liability for the fiscal year ended November 30, 1930, he so determined.

The Regulations provide, in substance, that each year's return, in so far as gross income and deductions are concerned, should be complete in itself, and the taxpayer is charged with the responsibility of adopting a method of accounting that will properly reflect both its income and expenses, whether business or capital. In the instant case, petitioner had adopted a method of accounting and had constantly used it for many years. Respondent, in the regular course of his official duties, was called upon each year to examine petitioner's income tax returns and, in so doing, to ascertain whether or not a proper method of accounting was being used by it. The method thus used was approved by respondent as properly reflecting the income of petitioner. The expenditures in question were never considered by either petitioner or respondent as being other than business expenses until long after they had been made and deducted as such. At the time they were deducted for the first two years there was no positive assurance that the automobile then in an-

ticipation would ever be produced. The evidence does not show to a satisfactory degree the items which constitute the total expenditures. The general term "development and experimental work" on a new model automobile to be produced in the future sheds little light upon the nature of such expenditures. Respondent considered the expenditures, as reflected by petitioner's books and its income tax returns for the years in question, as being such as entitled petitioner to their deductions as an ordinary and necessary business expense. It seems that it would be difficult to arrive at a different conclusion, under the facts. The record contains no evidence that would justify the Commissioner in deducting such expenditures other than as expenses during the year incurred. Much latitude and discretion is given the Commissioner and the Board in enforcing the Revenue Act, and their acts should not be disturbed, unless an abuse is shown. See Brown v. Helvering, Commissioner, 291 U. S. 193, 54 S.Ct. 356, 78 L.Ed. 725; Lucas, Commissioner, v. American Code Co., Inc., 280 U.S. 445, 50 S.Ct. 202, 74 L.Ed. 538, 67 A.L.R. 1010; Southern Abstract & Loan Co. v. Commissioner of Internal Revenue, 72 F.(2d) 130 (C.C.A.6); Nowland Realty Co. v. Commissioner of Internal Revenue, 47 F.(2d) 1018 (C.C.A.7).

The decision of the Board of Tax Appeals is affirmed.