ESTATE OF MARY BELL LEE, DECEASED, JAMES DONALD HINSON, EXECUTOR, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.
Estate of Lee v. Commissioner
Docket No. 8315-77.
United States Tax Court
T.C. Memo 1979-171; 1979 Tax Ct. Memo LEXIS 360; 38 T.C.M. (CCH) 728; T.C.M. (RIA) 79171; April 30, 1979, Filed *360 On the same day, decedent executed her will and a deed conveying to her daughter her residence and surrounding acreage. This occurred approximately nine weeks after her month-long stay in the hospital for pneumonia. One week later, decedent re-entered the hospital, where, at the age of 87, she died of pneumonia. Held, the execution of the deed was a transfer made in contemplation of death and is included in decedent's gross estate under section 2035, I.R.C. 1954. William H. Lassiter, Jr., for the petitioner. Wesley J. Lynes, for the respondent. BRUCE MEMORANDUM FINDINGS OF FACT AND OPINION BRUCE, Judge: Respondent determined a deficiency of $6,832.13 in the Federal estate tax of the Estate of Mary Bell Lee. The entire deficiency [1] *361 results from the inclusion in decedent's estate by respondent of the value of a residence and 17.6 acres of land which surround it. The issues relevant to this inclusion are (1) whether the gift of this property was in contemplation of death under section 2035[2] or (2) whether inclusion is triggered under section 2036 by the continued use of the property by decedent after the gift. FINDINGS OF FACT Mary Bell Lee died on May 7, 1975, a legal resident of Rutherford County, Tennessee. James Donald Hinson, executor of her estate, was a legal resident of Nashville, Tennessee when the Federal estate tax return was filed for petitioner. By the will of her husband, who died in 1947, decedent received title to their residence and the surrounding 17.6 acres which contained a trailer park. Decedent operated the trailer park on her own, even after her divorced daughter, Edith Annette Lee Barnette (Edith), and four grandchildren moved in with her in 1960. This solo-management of the trailer park continued until decedent's first hospitalization in 1975. Soon after the arrival of Edith and her children, decedent added a bedroom and bathroom to the residence. *362 Later, in 1965, Edith made improvements to the residence in the amount of $3,000. During the period 1970 through 1974, three of Edith's four children moved away from the residence. Edith and the fourth child remained with decedent until her death. No rent was ever paid to decedent by Edith. While decedent appeared to be in good physical condition and able to function on her own, such as managing the trailer park, she had suffered from high blood pressure for several years before her death and had suffered one or two strokes. Further, in January 1975, decedent was hospitalized for one month with pneumonia. During this period, Edith managed the rent collections and deposits of the trailer park for decedent. After being released from the hospital, decedent executed a deed comveying to Edith the residence and surrounding 17.6 acres. The only consideration recited was love and affection, ten dollars and the 1965 improvements paid for by Edith. On the same day, April 14, 1975, decedent executed her last will and testament, in which she acknowledged the gift deed as an advancement. Little else was left to Edith. Decedent chose to leave the property to Edith by deed rather than under *363 her will, for she feared that her son, Edith's brother Frank, would otherwise try to obtain the residence and surrounding land by a will contest. The remainder of the estate was to be in trust for Frank. Two days later, a new signature card was executed whereby Edith became co-signer of decedent's bank accounts. One week later, April 23, 1975, decedent re-entered the hospital with pneumonia. On this same day, the gift deed was recorded. Decedent remained in the hospital until her death, two weeks later, at the age of 87. While a gift tax return was filed in relation to the deed to Edith, the bank accounts, which passed to Edith as survivor, were included in the estate tax return in issue here. Although both parties agree that the value of the residence and 17.6 acres which was transferred is $53,750 less the $3,000 of improvements made by Edith, petitioner contends that the value should be treated as a life-motivated gift and excluded from decedent's taxable estate.Contending that the gift was not in contemplation of death, petitioner claims that the gift was to reward Edith for her past services and to induce Edith to continue caring for decedent. Further, petitioner claims *364 decedent was in excellent health and transferred the property to avoid future harassment by her son, Frank, for loans and to "enjoy life with her living family as best she knew how." In addition, petitioner claims that no specific agreement that decedent retain a life estate ever existed. Therefore, says petitioner, Edith's ownership was so complete that she could have ordered decedent to vacate the property at any time. In opposition, respondent has determined that decedent was not in good health prior to the execution of the gift deed and that the gift was intended by decedent as a substitute for a testamentary disposition. Therefore, respondent claims that the gift was made in contemplation of death and that the value should be included in decedent's estate under section 2035. In the alternative, respondent claims that no agreement for a life estate is necessary for inclusion under section 2036, since decedent actually retained the use and enjoyment of the gift property until her death. ULTIMATE FINDING OF FACT The execution of the deed on April 14, 1975, conveying the residence and surrounding land to Edith, was a gift made in contemplation of death. OPINION Section 2035, *365 as in effect at the time of decedent's death, [3] called for the inclusion in the gross estate of the value of donative transfers made within three years before decedent's death as made in contemplation of death unless decedent's intent could be shown to have been otherwise. A subjective examination of the donor's dominant motive, in light of her physical and mental condition, is the necessary test. United States v. wells,283 U.S. 102 (1931); Estate of Johnson v. Commissioner,10 T.C. 680, 688 (1948). It is petitioner's burden to prove that the donor was not motivated by the thought of death. Rule 142(a), Tax Court Rules of Practice and Procedure; Wickwire v. Reinecke,275 U.S. 101, 105 (1927). Decedent feared that her son, Frank would interfere with any disposition of her property under a will. Therefore, she chose to execute a deed to her daughter, *366 Edith, for the residence and surrounding property to make certain that Edith would receive the residence. Green v. Commissioner,6 B.T.A. 278 (1927). On the same day, decedent executed her will in which she acknowledged the deed as an advancement to Edith. [4] *367 She left little else to Edith. [5] The remainder of the estate, the vast majority of what passed under the will, was put in a trust for Frank. Therefore, most of Edith's "share" of her mother's property passed to her by way of the deed in question as part of an informal testamentary plan. Cleveland Trust Co. v. United States,421 F. 2d 475 (C.A. 6, 1970); Hetson v. United States,75-2 U.S.T.C. P13,098, 36 AFTR 2d 75-6505 (1975), adopted 209 Ct. Cl. 691 (1976). Further, since Edith is a natural object of her mother's bounty, the gift to her raises another strong inference that the deed was executed in contemplation of death. Smails v. O'Malley,127 F. 2d 410 (C.A. 8, 1942). One contention upon which petitioner relies heavily is that decedent was in good physical condition at the time the deed was executed. This is not supported by the facts. Decedent suffered from high blood pressure which had resulted in one or two strokes. Further, decedent had been released from the hospital only nine weeks prior to the execution of the deed, and returned to the hospital only one week thereafter. Both hospital stays were for pneumonia, from which decedent died during the second hospital stay. Clearly, decedent was not in good health when the deed was executed. Petitioner produced no physician to testify otherwise. Her physical condition was certainly not enhanced by her age of 87 years. [6] *368 As this Court stated in Estate of Cornelia B. Schwartz v. Commissioner,9 T.C. 229 (1947), at 236-237: it is reasonable to assume that decedent, being a practical woman, took into consideration the fact that she was 86 years of age, that the sands of life were running out, and that her life expectancy was short. It would be closing our eyes to the obvious to assume that thoughts of these matters did not enter into the decedent's mind and motivate the transfer. Age alone does not furnish a decisive test as to whether a transfer is motivated by considerations associated with death, UnitedStates v. Wells,supra; Flack v. Holtegel, 93 Fed. (2d) 512, but where, as here, other facts point to testamentary disposition, old age may tip the scales. Petitioner further claims that the deed was executed to help decedent avoid harrassment by Frank for loans and to relieve decedent of management duties connected with the trailer park. Since decedent re-entered the hospital soon after the deed was executed, her relief from management duties was not verifiable. *369 Nor did petitioner offer any evidence that relief from these duties was actually sought. As for relief from Frank's harassment for loans, this was not accomplished by executing the deed. While the deed conveyed the property to Edith, decedent retained access, as co-signer, to the bank account into which the collections from the trailer park were to be deposited. Thus, decedent's access to funds which could have been used as a loan to Frank was not diminished by the deed's execution.
Therefore, from the facts as set forth above, we find that the execution of the gift deed to Edith was in contemplation of death and the value of the property so deeded is to be included in decedent's gross estate by way of section 2035. It is, therefore, unnecessary for us to discuss the merits of respondent's determination with respect to section 2036. Decision will be entered for the respondent.
Footnotes
1. Another adjustment by respondent, unrelated to the issue presented here, reduced the taxable estate and is not contested by petitioner. Therefore, should we decide in whole or in part for petitioner, a decision under Rule 155, Tax Court Rules of Practice and Procedure↩, would be necessary for evaluation of petitioner's liability or refund. 2. All statutory references are to the Internal Revenue Code of 1954, as amended and in effect at the time of decedent's death, unless otherwise noted.↩
3. Section 2035↩ has since been amended by section 2001 of the Tax Reform Act of 1976, P.L. 94-455, to require inclusion within the gross estate of the value of all property transferred by decedent within three years of decedent's death, which was not for adequate and full consideration. A decedent's motives are thus no longer relevant.
4. Simultaneous execution of a will and a gift is insufficient to overcome clear evidence of life motives. American Fletcher National Bank & Trust Co. v. United States,441 F. 2d 470 (C.A. 7, 1971). However, such motives have not been clearly shown here. On the contrary, in conjunction with the other facts before us, simultaneous execution of the documents acts to further support a finding of an informal testamentary plan. 5. Estate of Mann v. Commissioner,10 T.C.M. 1235↩, 20 P-H Memo T.C. par. 51,377 (1951).
6. Absent the numerous other factors present in the instant case which point to a substitute for a testamentary disposition, age is not a conclusive element to the determination of whether a gift was in contemplation of death. E.g., Kniskern v. United States,232 F. Supp 7 (S.D.Fla., 1964) (age 99); Estate of Johnson v. Commissioner,10 T.C. 680↩ (1948) (age 94).